IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| GARRIS S. MCFADDEN, | * |
| Plaintiff, | * |
| v. | * CIVIL NO.: WDQ-04-cv-2317 |
| INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL-CIO, et al., | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION AND ORDER

Garris McFadden ("McFadden") sued the International Longshoremen's Association, AFL-CIO ("ILA") and Horace Alston, Vice-President of the ILA ("Alston") for violations of the ILA Constitution[1] and the Labor-Management Reporting and Disclosure Act ("LMRDA").[2] Pending are Defendants' motion for summary judgment and Plaintiff's motions for leave to amend the first amended complaint and for preliminary injunction. For the following reasons Defendant's motion for summary judgment will be granted. Plaintiff's motion to amend and motion for preliminary injunction will be denied.

---

[1] The Constitution and Rules of Order of the ILA as amended at the 51st Convention on July 21-24, 2003. *See* Mot. Summ. J. Ex. H.

[2] 29 U.S.C. §§ 401 et seq. (2005).

1

I.   BACKGROUND

McFadden has worked as a longshoreman in the Port of Baltimore and has been a member of the Local 333 union ("Local 333") since 1956.  Am. Compl. at ¶ 12.  Local 333 is an affiliate of the ILA that represents longshoremen working in the Port of Baltimore in labor relations matters with management of Baltimore based employers.  Id. at ¶ 9.  McFadden served as President of Local 333 "on several occasions in the 1970's and 1980's."  Id. at ¶ 12.  More recently, McFadden's role as an officer of Local 333 included service as a Walking Delegate starting in April 2003 and election as President on December 12, 2003.  Id. at ¶¶ 9, 12.  McFadden took office as President on January 1, 2004.  Id. at ¶ 12.

The ILA had been involved in negotiations with management of employers for a new "Master Contract" that would cover the working conditions, pay scales and benefits of longshoremen who work in the Atlantic Coast and Gulf Coast ports.  Id. at ¶ 14.  The negotiations began in 2003, and a vote was scheduled for Local 333 on June 8, 2004.  Id. at ¶¶ 14, 22.  McFadden opposed certain provisions of the Master Contract.  Id. at ¶ 15.

Charging petitions against McFadden, dated November 25, 2003, alleged "misconduct" and "conduct detrimental to the welfare to ILA as a labor organization."[3]  Id. at ¶ 16.  See Mot. Summ. J. Ex. C.

---

[3] The charges filed against McFadden included allegations of threatening employers with work stoppages, extending the time and

On January 5, 2004, Alston sent a letter to John Bowers ("Bowers"), the President of the ILA, attaching the petitions. *Id.* at ¶ 17; Mot. Summ. J. Ex. C.  On February 4, 2004, Bowers appointed a special committee to conduct a hearing on the charges against McFadden in Baltimore, where the matter would be resolved by the Atlantic Coast District Council ("ACD"). *Id*; Mot. Summ. J. Ex. D. On February 20, 2004, Edward Brown ("Brown"), the Chairman of the Special Committee, sent a letter to McFadden and others scheduling the hearing for March 15, 2004 in New York. *Id*; Mot. Summ J. Ex. E.  On March 11, 2004, McFadden notified Bowers and the Special Committee that he would not attend the hearing.[4] *Id.* at ¶ 18; Mot. Summ. J. Ex. F.

On April 15, 2004, the ACD Executive Board issued a decision adopting the recommendations of the Special Committee that investigated the charges filed against McFadden. *See* Mot. Summ. J. Exs. A, G.  The ACD Executive Board suspended McFadden's ILA

---

length of jobs, disruption of meetings with employers, and causing businesses to reconsider use of the Port of Baltimore. *See* Mot. Summ. J. Ex. C.

[4] The Complaint alleges that McFadden did not attend the hearing in New York, because it was scheduled for one week before the ILA Convention in Tampa, Florida.  However, the letter McFadden sent to Bowers states that McFadden would only attend a hearing held in Baltimore, where someone could "watch his back." McFadden also states, "there is nothing left but harm to me in NY an [sic] with the control that you have over the blacks around you, I am sure you could get any one of them to do your will." *See* Am. Compl. at ¶ 18; Mot. Summ J. Ex. F.

3

membership for 90 days and temporarily removed him from office. *Id*. at ¶¶ 9, 22; Mot. Summ. J. Ex. G.  The period of suspension included the date when the Master Contract was scheduled for submission to the membership for a vote.  *Id*. at ¶ 22.

McFadden asserts: (1) free speech and assembly rights violations under the LMRDA; and (2) due process rights violations under the LMRDA and the ILA Constitution.  McFadden seeks: (1) a judgment declaring the ACD decision and disciplinary actions null and void; (2) the issuance of an order restoring McFadden's membership and his office and enjoining Defendants from retaliating against him; (3) compensatory damages of $2 million dollars; (4) punitive damages of $8 million dollars; and (5) any other relief the Court deems appropriate.

II. Analysis
A.   Defendants' Motion for Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  A dispute about a material fact is genuine "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask... whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

The court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Electric Industrial Company v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but the opponent must produce evidence upon which a reasonable fact finder could rely. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  A mere "scintilla" of evidence will not preclude summary judgment.  *Anderson*, 477 U.S. at 252.


1.   Free Speech Rights under the LMRDA

McFadden argues that the findings and recommendations of the Special Committee and the decision of the ACD suspending his union membership were a pretext to prevent McFadden from speaking against and organizing opposition to the Master Contract.  McFadden argues that the suspension violated his right to free speech under the LMRDA.

The LMRDA includes a bill of rights for members of labor organizations, including freedom of speech and assembly.  The LMRDA states:

5

> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided*, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

29 U.S.C. § 411(a)(2). To establish a claim of retaliation, McFadden must show that: (1) he engaged in LMRDA protected speech; (2) disciplinary action taken against him because of the exercise of his free speech rights; (3) injured him. *Thorton v. Scardelletti*, No. DKC-98-532 and No. DKC-98-3328, 1999 U.S. Dist. Lexis 22437, at *32 (D. Md. March 22, 1999), *aff'd*, No. 99-1473, 1999 U.S. App. Lexis 20841 (4th Cir. Aug. 30, 1999). McFadden's threatening work stoppages and shutting down port operations is not protected speech, because the conduct interferes with the performance of contractual obligations and dissuades shippers from using the Port of Baltimore. *See* Mot. Summ. J. Ex. A.

McFadden has not established the first element of retaliation; he has not shown that the speech for which he was disciplined was protected. In arguing that the ACD suspended him because of his opposition to the Master Contract, McFadden does not refute the substance of the charges filed against him by members of Local

Unions 333, 953, and 1429.  *See* Charging Petitions attached at Mot. Summ. J. Ex. C.  McFadden's bald allegations that the suspension was a pretext is not evidence that the findings of the Special Committee were wrong.  Moreover he has not denied the actions that led to his suspension.  In the absence of evidence refuting the charges and showing pretext, McFadden's free speech claim must fail.

2.   Due Process Rights under the LMRDA and ILA Constitution

McFadden argues that his due process rights were violated, because he did not receive appropriate notice of the charges against him and the hearing.  Further, McFadden argues that he did not receive a full and fair hearing, because the hearing was held in his absence.  The LMRDA provides safeguards against improper disciplinary action:

> No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer, thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

29 U.S.C. § 411(a)(5). The ILA Constitution provides for the ILA or any of its subdivisions, including the Executive Council of a district, to discipline a member after "notice of and opportunity for hearing upon charges[.]" Mot. Summ. J. Ex. H, Article XVIII, Section 1(b).  Proceedings against a member may be initiated by filing written charges within 90 days of the events giving rise to

7

the charges.  *Id*. at Article XVIII, Section 3.  Written notice of the time and place of the hearing shall be given "not less than five days after the date of the notice."  *Id*.  "[A] hearing may be held on any charge notwithstanding the failure of the accused, after being given notice pursuant to the provisions of this Article, to appear thereat."  *Id*. at Article XVIII, Section 5.  Members also have the right to appeal hearing decisions.  *Id*. at Article XVIII, Section 6; Article XIX.

 McFadden received sufficient written notice of the charges filed against him when the January 5, 2004 letter and attached petitions were forwarded to him.  *See* Alston Affidavit at ¶ 11.  The charges concerned events that occurred 90 days before January 5, 2004.  McFadden was notified of the March 15, 2004 hearing date on February 20, 2004.  McFadden chose not to attend the hearing in New York, because he wanted the hearing held in Baltimore where someone could "watch his back."  McFadden waived his right to be present at the hearing when he decided not to attend.  *See Thornton* at *39.  McFadden cannot argue that he was denied procedural safeguards when he was notified of the charges against him, given adequate time to prepare a defense, and chose to remain absent from the hearing.  *Steward v. St. Louis Typographical Union*, 451 F. Supp. 314, 316 (E.D. Mo. 1978).  McFadden's due process claim must fail.

8

B.   Plaintiff's Motions

As Defendants' motion for summary judgment has been granted, and his proposed amended complaint would not preclude summary judgment, Plaintiff's motions to amend the first amended complaint and for preliminary injunction are moot.

## CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment will be granted; Plaintiff's motions to amend and for preliminary injunction will be denied.

<u>January 12, 2006</u>                                     _____/s/_____

Date                                                                William D. Quarles, Jr.
                                                                    United States District Judge